UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| SONAL RANA,<br><br>            Plaintiff,<br><br>   vs.<br><br>ONESTREAM, INC., THOMAS SHEA,<br>DAVID H. PETRAEUS, JOHN KINZER,<br>DAVE WELSH, KARA WILSON, BRADLEY<br>BROWN, MIKE BURKLAND, JONATHAN<br>MARINER, and DR. BASKAR SRIDHARAN<br><br>          Defendants. | Case No. 26-cv-1931 |

## COMPLAINT

Plaintiff Sonal Rana ("Plaintiff"), by and through her counsel, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

### NATURE OF THE ACTION

1.    This is an action brought by Plaintiff against OneStream, Inc. ("OneStream" or the "Company") and the members of the Company's board of directors (collectively referred to as the "Board" or the "Individual Defendants" and, together with OneStream, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a) respectively, and United States Securities and Exchange Commission ("SEC") Rule 14c-6, 17 C.F.R. § 240.14c-6. Plaintiff's claims arise in connection with the proposed acquisition of OneStream by Hg ("Hg") Onward AcquireCo Inc., Onward Merger Sub 2, LLC, and

1

Onward Merger Sub, Inc. (collectively "Merger Subs"), all of which were created solely to facilitate the present transaction (together with Hg and Merger Subs, "Hg").

2.      On or about January 6, 2026, OneStream entered into an agreement and plan of merger (the "Merger Agreement"), whereby Hg will acquire OneStream (the "Transaction") and shareholders of OneStream common stock will receive $24.00 in cash for each share of OneStream common stock they own (the "Merger Consideration"). The Proposed Transaction is not subject to a stockholder vote because KKR Dream Holdings LLC's ("KKR") holds 58 percent voting power of the outstanding shares of OneStream and has approved the Proposed Transaction via written consent.

3.      On or about February 17, 2026, in order to inform shareholders of the Proposed Transaction and their rights of appraisal and other matters concerning the Proposed Transaction, the Board authorized the filing of a Schedule 14C Information Statement (the "Information Statement") with the Securities and Exchange Commission ("SEC").  As detailed below, the Information Statement is materially incomplete and misleading with respect to how the rolling over of Company equity was contemplated and material omissions regarding the financial analyses attached to the fairness opinion provided by OneStream's financial advisors.

4.      Because the Transaction will not be subject to a stockholder vote, it is imperative that the material information that has been omitted from the Information Statement be disclosed immediately so public stockholders may have time to consider the information that has been omitted and misrepresented in the Information Statement and make a fully and fairly informed determination as to the fairness of the Proposed Transaction and how their shares will be impacted before the Proposed Transactions close after customary regulatory hurdles are completed.

5.      For these reasons, and as set forth in detail herein, Plaintiff seeks to enjoin

Defendants from completely consummating the Proposed Transaction, unless and until the material information discussed below is disclosed to OneStream's shareholders, or, alternatively, recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6.     This Court has jurisdiction over all claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14c-6.

7.     Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over each defendant by this Court permissible under the traditional notions of fair play and substantial justice. "Where a federal statute such as Section 27 of the [Exchange] Act confers nationwide service of process, the question becomes whether the party has sufficient contacts with the United States, not any particular state." *Sec. Inv'r Prot. Corp. v. Vigman*, 764 F.2d 1309, 1315 (9th Cir. 1985). "[S]o long as a defendant has minimum contacts with the United States, Section 27 of the Act confers personal jurisdiction over the defendant in any federal district court." *Vigman*, 764 F.2d at 1316.

8.     Venue is proper in this Court under Section 27 of the Exchange Act, 15 U.S.C. § 78aa and 28 U.S.C. § 1391(b)(2) because Defendants are subject to personal jurisdiction in this District, Defendants' financial advisors maintain offices in this District, and shareholders of the Company reside in this District so Defendants were aware that the Information Statement would be reviewed in this District. *Santore v. Swaminathan*, No. 17 cv 5742, 2018 U.S. Dist. LEXIS 33352, at *23 (N.D. Ill. Mar. 1, 2018) ("the standard for establishing venue under [the Exchange Act] is

not a rigorous one") (quoting *Haskett v. Reliv' Int'l.*, No 94 c 1461, 1994 U.S. Dist. LEXIS 5678, at *6 (N.D. Ill. Apr. 29, 1994)); *see also City of Miami Gen. Emples. & Sanitation Emples. Ret. Trust v. Casey*, No. 22-cv-2371, 2023 U.S. Dist. LEXIS 239991, at *4 (S.D. Ohio Mar. 27, 2023) ("The rule for establishing venue under the Securities Exchange Act is more permissive than under 28 U.S.C. § 1391, consistent with the intent of the venue and jurisdiction provision in the securities laws 'to grant potential plaintiffs liberal choice in their selection of a forum.'") (quoting *Wayne Cnty. Emples.' Ret. Sys. v. MIC Inv. Corp.*, 604 F. Supp. 2d 969, 973 (E.D. Mich. 2009)). Further, Defendants were aware that the Tender Offer Statement and/or the Recommendation Statement would be reviewed in this District. *See Sarantakis v. Gruttadauria*, No. 02 c 1609, 2003 U.S. Dist. LEXIS 4002, at *23 (N.D. Ill. Mar. 17, 2003) ("Venue is appropriate in a securities case where a defendant causes false or misleading information to be transmitted into a judicial district."); *see also Oxford First Corp. v. PNC Liquidating Corp.*, 372 F. Supp. 191, 197 (E.D. Pa. Mar. 6, 1974) ("Venue will be sustained in a securities case where a defendant causes false or misleading information to be transmitted into a judicial district, even if the defendant never has been physically present in that district."); *Mitchell v. Texas Gulf Sulphur Co.*, 446 F.2d 90, 106 (10th Cir. 1971) (finding venue proper in the District of Utah where the defendant released a false and fraudulent press statement that was printed in the Wall Street Journal and was read and relied upon by the plaintiff in Salt Lake City, Utah).

## PARTIES

9. Plaintiff is, and has been continuously throughout all times relevant hereto, an owner of OneStream common stock.

10. Defendant OneStream is a publicly traded Delaware corporation with the principal place of business in Michigan. OneStream is software company that provides a single cloud-based

platform for large enterprises to aid their organization for financial processes. OneStream's common stock trades on the Nasdaq Global Select Market (the "Nasdaq") under the ticker symbol "OS."

11.     Defendant Thomas Shea ("Shea") is the Co-Founder, CEO, and Chairman of the Board of Directors.

12.     Defendant David H. Petraeus ("Petraeus") is a director of the Company

13.     Defendant John Kinzer ("Kinzer") is a director of the Company.

14.     Defendant Dave Welsh ("Welsh") is a director of the Company.

15.     Defendant Kara Wilson ("Wilson") is a director of the Company.

16.     Defendant Bradley Brown ("Brown") is a director of the Company.

17.     Defendant Michael Burkland ("Burkland") is a director of the Company.

18.     Defendant Jonathan Mariner ("Mariner") is a director of the Company.

19.     Defendant Dr. Baskar Sridharan ("Sridharan") is a director of the Company.

20.     The defendants identified in paragraphs 11 through 19 are collectively referred to as the "Individual Defendants" or the "Board."

## SUBSTANTIVE ALLEGATIONS

**A.  Background of the Proposed Transaction**

21.     In connection to OneStream's July 2024 initial public offering, OneStream entered into a tax receivable agreement ("TRA") with certain of its affiliates, including KKR. Under the TRA, OneStream was required to pay 85 percent of tax savings that are realized or deemed realized. Payment obligations under the TRA presented considerable benefits to KKR and its affiliates.

22.     In March 2025, representatives from a "Party A" presented a preliminary interest in a potential business combination with OneStream. Party A and OneStream entered into a

Case: 1:26-cv-01931 Document #: 1 Filed: 02/20/26 Page 6 of 22 PageID #:6

confidentiality agreement to share due diligence.

23.     In April 2025, a "Party B" contacted OneStream's management to discuss a potential strategic transaction. To facilitate such discussions, Party B and OneStream entered into a confidentiality agreement to share due diligence.

24.     In May 2025, an existing investor in OneStream introduced OneStream's management to representatives from Hg. The initial meeting saw Hg expressing an interest in exploring a transaction with OneStream.

25.     In July 2025, representatives of Hg requested to receive more detailed due diligence information on OneStream.

26.     On July 30, 2025, the OneStream Board established a "Strategic Committee" that was comprised of solely of the KKR affiliated directors Welsh, Kinzer, and Wilson to explore and evaluate strategic alternatives in lieu of ongoing discussions with Hg and other potential parties like Party A and Party B.

27.     On July 31, 2025, the Strategic Committee met with the Board to discuss updates regarding discussions with Hg. After this meeting, the Strategic Committee no longer met.

28.     Over the next several weeks, OneStream management met with representatives of Hg to conduct financial and other due diligence items.

29.     On September 17, 2025, Hg delivered a written, non-binding indication of interest to acquire OneStream for $24.75 per share in cash ("Initial Hg Proposal"). The Initial Hg Proposal contemplated a rollover of certain OneStream stockholders' equity and retention agreements with Shea and other members of management.

30.     After determining that the Initial Hg Proposal was inadequate, members of OneStream's management met with representatives of Hg to further discuss due diligence items

over the next couple weeks.

31.     On October 1, 2025, Hg delivered a revised written non-binding indication of interest to acquire OneStream for $26.00 per share in cash ("First Revised Hg Proposal") which contemplated similar conditions as the Initial Hg Proposal with the exception that the TRA would terminate without payments upon the completion of a potential transaction.

32.     The OneStream Board again determined that the Frist Revised Hg Proposal was inadequate and directed its management to continue due diligence and discussions with representatives of Hg.

33.     Beginning on October 5, 2025, Hg and its advisors were granted access to OneStream's virtual data room to conduct more in-depth due diligence.

34.     On October 15, 2025, Hg circulated an initial draft of the Merger Agreement, which continued to contemplate a rollover of certain OneStream stockholders' equity.

35.     On October 27, 2025, the Board determined not to proceed with the initial draft of the Merger Agreement because, among other things, the Board was unsure if the rollover of equity would be accepted by certain OneStream stockholders, most notably Shea.

36.     On November 11, 2025, Hg sent another written non-binding indication of interest to acquire OneStream for $24.00 per share in cash ("Second Revised Hg Proposal"). The Second Revised Hg Proposal was conditioned on the termination of the TRA in addition to certain OneStream stockholders rolling over their equity.

37.     The Board determined that the Second Revised Hg Proposal was inadequate.

38.     On December 17, 2025, Hg delivered a written non-binding indication of interest that reaffirmed the terms in the Second Revised Hg Proposal.

39.     Following the December 17, 2025 proposal by Hg, the Board continued negotiations

with Hg and began specifically negotiating the termination of the TRA in advance of finalizing a merger agreement.

40.     On January 5, 2026, following an amendment to the TRA, the Board determined that the draft Merger Agreement was acceptable. Thereafter, on January 6, 2026, the Merger Agreement and TRA amendment were executed.

## B.   The Proposed Transaction and the Issuance of the Materially Incomplete and Misleading Information Statement

41.     On or about January 6, 2026, OneStream and Hg issued a joint press release to announce the Proposed Transaction, stating in part:

### OneStream Enters into Definitive Agreement to be Acquired by Hg for $6.4 Billion

BIRMINGHAM, Mich., Jan. 6, 2026 /PRNewswire/ -- OneStream, Inc. (Nasdaq: OS) ("OneStream" or the "Company"), the leading enterprise Finance management platform that modernizes the Office of the CFO by unifying core Finance and operational functions – including financial close, consolidation, reporting, planning and forecasting – today announced that it has entered into a definitive agreement to be acquired by Hg, a leading investor in software, services and data businesses. The all-cash transaction values OneStream at approximately $6.4 billion in equity value. Hg will be OneStream's majority voting shareholder. General Atlantic, a leading global investor, will also be a significant minority investor alongside Tidemark, a leading technology investment firm.

Under the terms of the agreement, OneStream shareholders will receive $24.00 per share in cash. The per-share purchase price represents a 31% premium to OneStream's closing share price on January 5, 2026 and a 27% premium to its volume-weighted average share price over the 30-trading day period ending the same date. An entity controlled by Hg will acquire all outstanding shares, including those shares owned by investment funds managed by KKR, a leading global investment firm, which took OneStream public in 2024. The transaction is expected to close in the first half of 2026. Upon completion of the transaction, OneStream will become a privately held company. Hg will invest in OneStream from its Saturn Fund.

…

**Transaction Details**

The transaction, which has been unanimously approved by OneStream's Board of Directors, is expected to close in the first half of 2026, subject to the receipt of required regulatory approvals and the satisfaction of other customary closing conditions. KKR, in its capacity as the holder of a majority of OneStream's voting power, has approved the transaction. No further approval of OneStream's stockholders is required or will be sought.

Upon completion of the transaction, OneStream's Class A common stock will no longer be listed or traded on any public stock exchange.

Mr. Shea will continue to serve as CEO, and the current leadership team will remain in place. OneStream will maintain its headquarters in Birmingham, Michigan.

**Advisors**

J.P. Morgan Securities LLC is acting as financial advisor and provided a fairness opinion to OneStream, and Centerview Partners LLC provided a fairness opinion. Wilson Sonsini Goodrich & Rosati, Professional Corporation, is serving as legal advisor, and FGS Global is serving as strategic communications advisor to OneStream. Goldman Sachs & Co. LLC is serving as exclusive financial advisor, and Skadden, Arps, Slate, Meagher & Flom LLP is serving as legal advisor to Hg. Jones Day is serving as legal advisor to KKR. Paul, Weiss, Rifkind, Wharton & Garrison LLP is serving as financing counsel to Hg. Deloitte & Touche LLP is providing financial & tax diligence, Bain & Company is providing commercial & technological diligence and Cruxy & Company is providing product strategy diligence, to Hg.

42.     On or about February 17, 2026, OneStream, the Board authorized the filing of the materially incomplete Information Statement with the SEC.

**C**.    **The Preclusive Deal Protection Devices**

43.     The Merger Agreement contains onerous and preclusive deal protection devices that operate conjunctively to make the Proposed Transaction a *fait accompli* and all but ensure that the Proposed Transaction is consummated and that no competing offers emerge for the Company.

44.     The Merger Agreement provides for a termination fee payable to Parent by the Company in the amount of $207,000,000 in the event the transaction is not consummated.

45.     Accordingly, Plaintiff seeks injunctive and other equitable relief to prevent the irreparable injury that the Company's stockholders will continue to suffer absent judicial intervention.

**D.     The Materially Incomplete and Misleading Information Statement**

46.     The Information Statement is materially incomplete and silent as to (i) the process by which defendant Shea finally concluded that he would consent to the rollover of certain of his equity in the Company, notwithstanding his initial reluctance to do so during negotiations with Hg; and (ii) whether  cash flow projections included in the DCF Analyses of J.P. Morgan Securities LLC ("JPM") and Centerview Partners LLC's ("Centerview") took into account certain tax attributes of OneStream.

**i.     The Information Statement is Materially Misleading and Incomplete with Respect to the Process leading up to the Shea's Decision to Roll Over his Shares**

47.     The Information Statement does not fairly disclose all the details concerning Shea's decision to roll over his shares.

48.     Indeed, the Information Statement discloses that a significant reason for declining Hg's First Revised Proposal was because Shea was reluctant to participate in a rollover of his shares in OneStream even though Hg's $26.00 offer was superior to Party A's subsequent offer in the "low $20s" per share on October 17, 2025.  *See* Information Statement at 35:

> Mr. Shea noted that representatives of Hg expected that members of OneStream senior management would roll over some or all of their equity stake in OneStream in connection with an acquisition of OneStream by Hg; ***Mr. Shea informed the OneStream Board that he was undecided regarding his participation in such a rollover at that time***. The OneStream Board determined not to authorize discussions between Hg and OneStream senior management regarding a rollover or other individual employment or retention arrangements at that time.

Information Statement at 34 (emphasis added).

49.     Similarly, when Hg circulated an initial draft of the Merger Agreement on October 15, 2025, the Board refused to continue discussions with Hg because of Shea's indecision regarding the rollover of his shares:

> In executive session, **without Mr. Shea in attendance**, the OneStream Board discussed the timing of potential discussions between Hg and senior management regarding a rollover and other individual employment or retention arrangements following a transaction, based on the expectation that Hg would require such a rollover as part of their retention plans for senior management. The OneStream Board determined not to authorize these discussions because (1) the OneStream Board expected further negotiation over the economic terms of an acquisition with Hg and (2) *it was concerned that Mr. Shea being undecided regarding a rollover in connection with a transaction would impair Hg's willingness to pursue an acquisition of OneStream*.

Information Statement at 35 (emphasis added).

50.     On November 11, 2025, after receiving Hg's Second Revised Proposal which contemplated a reduced $24.00 per share cash offer, the Board noted that the decrease offer price was likely attributable to, among other things, increased market volatility:

> Noting the decrease in the value of the Second Revised Hg Proposal as compared to the First Revised Hg Proposal, the OneStream Board attributed this decrease to concerns by Hg with OneStream's customer acquisition and renewal prospects, as well as market trends in the software industry generally.

Information Statement at 36-37.

51.     However, notwithstanding Hg's lower offer price and "market trends," the Board still determined that future negotiations with Hg should not continue because "Mr. Shea noted that, based on the terms of the Second Revised Hg Proposal, *his preference was not to participate in a rollover of his equity stake at that time*." Information Statement at 37 (emphasis added).

52.     A little more than a month later, on December 18, 2025, Shea changed his mind and agreed to rollover his equity despite the fact that the overall financial and market conditions were

largely the same as when the Company was considering Hg's Second Revised Proposal in November 2025:

> The representatives of J.P. Morgan discussed preliminary financial analyses of the Final Hg Proposal (***which analysis was unchanged from that given on November 11, 2025***). The OneStream Board discussed (1) the volatility in the trading price of OneStream's Class A common stock and other companies in the software industry; (2) the strategic and organizational changes to OneStream's business that could improve the effectiveness of OneStream's sales and marketing function, which changes remained in early stages; and (3) the risks to achieving the benefits contemplated by these changes as well as the risks to achieving the financial and operating results contemplated by the financial projections. Mr. Shea informed the OneStream Board that, upon further reflection, and based upon the foregoing considerations, ***he was now willing to agree to participate in a rollover in an acquisition based on the Final Hg Proposal if required by Hg to complete the transaction, subject to negotiating the terms of the rollover with Hg.***

Information Statement at 37 (emphasis added).

53.     The only intervening event to explain this change appears to have been interactions a week earlier between Welsh and Hg representatives: "On December 10, 2025, representatives of Hg contacted Mr. Welsh to inform him that Hg remained interested in pursuing an acquisition of OneStream." Information Statement at 37.

54.     The Information Statement is silent as to the substance of discussions between Welsh and Hg representatives and whether such discussions influenced Shea's decision to rollover his equity.

55.     Such silence is especially concerning given that Welsh and the majority of the Board are executives at KKR or KKR-affiliates. Only four of the nine Board members are independent of KKR or KKR-affiliates.

56.     Further, as disclosed by the Information Statement, KKR owns 58 percent of the outstanding equity in the Company. Information Statement at 4. KKR and its affiliates will receive approximately        $2.3        billion        from        the        Proposed        Transaction.

https://www.gurufocus.com/news/4103204/kkr-kkr-boosts-returns-with-onestream-os-sale?utm (last accessed 2/19/2026).

57.    As detailed in the Information Statement, as far back as April 2025, Shea and Welsh had established a process and understanding with respect to Shea updating Welsh in connection with a strategic transaction involving OneStream.   The Information Statement states, in pertinent part:

> Throughout March, April and May 2025, from time to time, Mr. Shea updated David Welsh, OneStream's lead independent director, regarding discussions with Party A, Party B and Party C. From time to time during the same period, Mr. Welsh updated other members of the OneStream Board with respect to these discussions, and relayed to Mr. Shea that Mr. Welsh and such other members of the OneStream Board supported OneStream management engaging in further discussions with these parties to determine their level of interest in a transaction with OneStream.

Information Statement at 29.

58.    The Information Statement does not disclose the extent to which KKR may have influenced and/or otherwise induced Shea to accept Hg's condition that he rollover his equity in OneStream, especially as the Information Statement suggests that KKR was eager from the earliest and most preliminary contacts with Hg to pursue a transaction even if that meant terminating the TRA which was favorable to KKR:

> The OneStream Board discussed potential responses to the Initial Hg Proposal, the status of Hg's due diligence review of OneStream and illustrative timelines with respect to a potential transaction. ***It was noted that KKR was the major beneficiary under the TRA***, and that the TRA could be amended with the written approval of OneStream, OneStream LLC and KKR. ***Mr. Welsh noted his expectation that, in the event that the OneStream Board determined to pursue a potential transaction***, KKR's objective would be to maximize value to OneStream's stockholders in such transaction and it would be open to considering various strategic and negotiating alternatives to do so, ***including the potential termination of OneStream's payment obligations under the TRA*** in respect of such transaction.

Information Statement at 32 (emphasis added).

59. As such, it is unknown what role Welsh or other KKR representatives may have had in influencing Shea to agree to a rollover of his equity, especially as Hg's accepted offer of $24 per share was two dollars less than the $26 per share contemplated by the First Revised Proposal.

60. Such information concerning the processes, inducements and other influences affecting Shea's eventual acceptance of the rollover of his equity are clearly material to the reasonable stockholder, especially as KKR through its representative Welsh may have played a significant role. Without Shea's acceptance of the rollover, it appears unlikely that Hg would have moved forward with the Proposed Transaction because Shea (i) is the founder and CEO of OneStream and will be a significant help in the post-closing transition, continuity and execution of the future company, and (ii) owns approximately 16.3% of the outstanding stock of OneStream, on a fully converted basis. A reasonable stockholder lacks crucial information as to whether the deal with Hg was favored over other parties to advance KKR interests rather than the interests of all OneStream stockholders and therefore stockholders are missing vital information necessary to determine if the board obtained reasonable value in agreeing to the Proposed Transaction.

**ii.    The Information Statement is materially false and misleading with respect to JPM and Centerview's DCF Analyses**

61. The Information Statement contains incomplete and potentially materially misleading DCF Analyses from both JPM and Centerview.

62. As part of its DCF Analysis, JPM presents the following information regarding the cash flow projections for OneStream:

***Discounted Cash Flow Analysis.***
J.P. Morgan conducted a discounted cash flow analysis for the purpose of determining an implied fully diluted equity value per share of our Class A common stock. J.P. Morgan calculated the unlevered free cash flows that OneStream is expected to generate during fiscal years 2026 through 2035 based on the financial projections.

14

J.P. Morgan also calculated a range of terminal values for OneStream at the end of this period by applying terminal growth rates ranging from 4.0% to 5.0%, based on guidance provided by OneStream management, to estimates of OneStream's unlevered terminal free cash at the end of fiscal year 2035, as provided in the financial projections.

J.P. Morgan then discounted the unlevered free cash flow estimates and the range of terminal values to present value as of December 31, 2025 using a range of discount rates from 10.00% to 11.00%, which range was selected by J.P. Morgan based upon an analysis of the weighted average cost of capital of OneStream. The present values of the unlevered free cash flow estimates and the range of terminal values were then adjusted for OneStream's estimated net cash as of December 31, 2025, as provided by OneStream management.

Information Statement at 51-52.

63.     Similarly, as part of its DCF Analysis, Centerview presents the following information regarding the cash flow projections for OneStream:

*Discounted Cash Flow Analysis*

Centerview performed a discounted cash flow analysis of OneStream based on the Forecasts. A discounted cash flow analysis is a traditional valuation methodology used to derive a valuation of an asset or set of assets by calculating the "present value" of estimated future cash flows of the asset or set of assets. "**Present value**" refers to the current value of future cash flows or amounts and is obtained by discounting those future cash flows or amounts by a discount rate that takes into account macroeconomic assumptions and estimates of risk, the opportunity cost of capital, expected returns and other appropriate factors.

In performing this analysis, Centerview calculated a range of implied equity values for our Class A common stock by (a) discounting to present value as of December 31, 2025, using discount rates ranging from 11.75% to 14.00% (based on Centerview's analysis of OneStream's weighted average cost of capital determined using the capital asset pricing model and based on considerations that Centerview deemed relevant in its professional judgment and experience) and using a mid-year convention: (i) the forecasted risk-adjusted, after-tax unlevered free cash flows of OneStream over the period beginning on January 1, 2026 and ending on December 31, 2035, based on the Forecasts; and (ii) a range of implied terminal values of OneStream calculated by Centerview by applying a range of terminal multiples to OneStream's estimated revenue for the next 12 months as of December 31, 2035 as reflected in the Forecasts, ranging from 4.0x to 5.5x, and (b) adding to the foregoing results OneStream's estimated net cash of $689 million as of December 31, 2025, as set forth in the Forecasts.

Centerview divided the result of the foregoing calculations by the number of fully diluted outstanding shares of our common stock (calculated using the treasury stock method and taking into account outstanding options and unvested restricted stock units (including pending restricted stock units to be granted by January 5, 2026)) as of December 30, 2025, as set forth in the Internal Data, and added the present-value per share impact of net operating loss carryforwards and tax attributes in connection with the TRA reflected in the Forecasts, resulting in a range of implied equity values per share of our Class A common stock of $20.60 to $29.50, rounded to the nearest $0.05. Centerview then compared this range to the per share price of $24.00 per share in cash, without interest, proposed to be paid to the holders of shares of our Class A common stock (other than as provided in Centerview's opinion) pursuant to the Merger Agreement.

Information Statement at 58.

64.     Unfortunately, it is unclear whether JPM or Centerview's DCF Analysis was based on cash flow projections that accounted for OneStream's tax attributes, and even if so, whether the tax attributes accounted for OneStream's investments in its subsidiary, OneStream, LLC, which as of OneStream's Annual Report on Form10-K for fiscal 2024 valued OneStream, LLC at $172.7 million. The magnitude of these tax attributes would clearly have a material effect on the conclusions of JPM and Centerview's DCF Analyses.

65.     Without this information, the DCF Analyses of JPM and Centerview to support their respective opinions that the Proposed Transaction is fair to stockholders are incomplete and misleading and therefore of little value to OneStream or its stockholders in attempting to assess the true value of the Company or its shares of common stock.

## COUNT I

**(Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14c-6)**

66.     Plaintiff incorporates each and every allegation set forth as if fully set forth herein.

67.     Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a

national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

68. Rule 14c-6, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14c-6.

69. The omission of information from a proxy will violate Section 14(a) and Rule 14c-6 if other SEC regulations specifically require disclosure of the omitted information.

70. Defendants have issued the Information Statement with the intention of soliciting the Company's common shareholders' support for the Proposed Transaction. Each of the Individual Defendants reviewed and authorized the dissemination of the misleading Information Statement, which attempts to minimize the number of shares voting against the Proposed Transaction.

71. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Information Statement, but nonetheless failed to obtain and disclose such

information to the Company's shareholders although they could have done so without extraordinary effort.

72.     The Individual Defendants knew or were negligent in not knowing that the Information Statement is materially misleading and omits material facts that are necessary to render it not misleading.  The Individual Defendants undoubtedly reviewed and relied upon most if not all of the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction.  The Individual Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Information Statement, rendering the sections of the Information Statement identified above to be materially incomplete and misleading.  Indeed, the Individual Defendants were required to, separately, and be particularly attentive to the procedures followed in preparing the Information Statement and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

73.     The Individual Defendants were, at the very least, negligent in preparing and reviewing the Information Statement.  The preparation of the Information Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligent, recklessness, or intentional conduct.

74.     The Company is also deemed liable as a result of the Individual Defendants' negligent, reckless, or intentional conduct preparing and reviewing the Information Statement.

75.     The misrepresentations and omissions in the Information Statement are material to Plaintiff, who will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the Shareholder Vote.  Plaintiff has no adequate remedy at law.

Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

### (Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act)

76.     Plaintiff incorporates each and every allegation set forth as if fully set forth herein.

77.     The Individual Defendants acted as controlling persons of the Company within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of the Company, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Information Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading

78.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Information Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

79.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same.  The Information Statement contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction.  They were thus directly involved in preparing this document.

80.     In addition, as the Information Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Proposed Transaction.  The Information Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered.  The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

81.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

82.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14c-6 by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

83.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14c-6 by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

84.     Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.      Preliminarily enjoining Defendants and all persons acting in concert with them from proceeding with the Shareholder Vote or taking any steps to consummate the Proposed Transaction, until the Company issues curative disclosures that fully address the deficiencies in the Information Statement;

B.      Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C.      Directing the Defendants to account to Plaintiff for all damages sustained as a result of their wrongdoing;

D.      Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E.      Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: February 20, 2026                          **ADEMI LLP**

                                      By:   */s/ John D. Blythin*
                                            Guri Ademi (WI 1021729)
                                            John D. Blythin (IL 6281648)
                                            3620 East Layton Avenue
                                            Cudahy, Wisconsin 53110
                                            Tel. 414-482-8000
                                            Fax 414-482-8001
                                            gademi@ademilaw.com
                                            jblythin@ademilaw.com

                                            *Attorneys for Plaintiff*